**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LENORE M. GIBBONS,

        Plaintiff,

                                      Case No. 3:12-cv-676-J-JRK

vs.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

# OPINION AND ORDER[2]

## I. Status

Lenore M. Gibbons ("Plaintiff"), proceeding pro se, is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Although Plaintiff represents herself in this Court, she was represented by an attorney during the administrative proceedings. See Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed September 10, 2012, at 38, 131-32. Plaintiff's alleged inability to work is based on impairments relating to her neck (for which she underwent two discectomies) and right arm, hands, and fingers, including nerve damage. Tr. at 80, 246. On June 12, 2007, Plaintiff filed an application for DIB, alleging a disability onset date of January 4, 2006. Tr. at 205-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 20), filed January 10, 2013; Reference Order (Doc. No. 22), signed January 14, 2013 and filed January 16, 2013.

07. Plaintiff's claim was denied initially, Tr. at 111-12, 133-35, and was denied upon reconsideration, Tr. at 113-14, 139-40.

On January 13, 2011, an Administrative Law Judge ("ALJ") presided over a hearing at which Plaintiff and her attorney appeared. Tr. at 59-110. Also present at the hearing was a non-examining medical expert, Charles Hancock, M.D. Tr. at 59. On January 24, 2011, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 16-31.[3] Plaintiff then requested review by the Appeals Council. Tr. at 11. The Appeals Council received and admitted some additional evidence in the form of briefs by Plaintiff's attorney, Tr. at 4-5, 310-12, 313, and denied Plaintiff's request for review on April 10, 2012, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On June 14, 2012, Plaintiff commenced this case under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Although not specifically delineated as such, Plaintiff's arguments on appeal can be boiled down to three main issues: (1) whether the ALJ properly considered the opinions of the various medical sources; (2) whether the ALJ properly discredited Plaintiff's testimony regarding how her impairments affect her; and (3) whether the ALJ properly disallowed testimony from Plaintiff's husband and friend regarding how her impairments affect her.[4]

---

[3] The administrative transcript also contains a decision by the ALJ entered on August 19, 2008, Tr. at 118-27, after a July 24, 2008 hearing, Tr. at 38-58. By Order entered May 21, 2010, the Appeals Council vacated the August 19, 2008 decision and remanded the matter for further consideration. Tr. at 129-30. Upon remand, the ALJ held the January 13, 2011 hearing and entered the January 24, 2011 Decision that is at issue in this appeal.

[4] Filings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). The undersigned has liberally construed Plaintiff's arguments.

See generally Plaintiff's Memorandum (Doc. No. 17; "Pl.'s Mem."), filed November 13, 2012. Defendant filed a responsive memorandum on January 11, 2013. See Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."). After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 18-30. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January 4, 2006, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff suffers from "the following severe impairments: disorders

---

[5]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

of the spine with chronic neck pain secondary to post laminectomy syndrome and facet arthropathy; and right shoulder pain secondary to tendonitis and acromioclavicular degenerative joint disease; right shoulder tendonitis; and fibromyalgia." Tr. at 19 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 22 (emphasis and citation omitted).

> The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):
>
> [Plaintiff can] perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] needs a sit stand option. [Plaintiff] should avoid ladders or unprotected heights and the operation of heavy moving machinery. [Plaintiff] needs to avoid unusual stress. [Plaintiff] should avoid crouching and stooping but may occasionally bend, kneel, squat or crawl. [Plaintiff] should avoid the operation of hand and arm controls. [Plaintiff] can lift a maximum of ten pounds frequently and occasionally. [Plaintiff] needs to avoid repetitive twisting of the neck, overhead reaching and concentrated vibrations.

Tr. at 23 (emphasis omitted).  At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a sales representative financial services," as "[t]his work does not require the performance of work-related activities precluded by [Plaintiff]'s [RFC]." Tr. at 29 (emphasis and citation omitted).  The ALJ also made alternative step five findings.  After considering Plaintiff's age ("closely approaching advanced age"), education ("at least a high school education"), work experience, and RFC, the ALJ determined at step five that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform." Tr. at 29 (citation omitted).  These jobs include "marker, II," "route clerk," and "ticket taker[.]" Tr. at 30.  The ALJ concluded Plaintiff was not under a disability from January 4, 2006 through the date of the Decision.  Tr. at 30 (citation omitted).

-4-

### **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

**A. Medical Opinions**

At issue are the medical opinions of three treating physicians, as well as two non-examining physicians and one non-examining medical expert, who testified at the hearing. In addressing the ALJ's findings with respect to the various medical opinions, the Court first sets out the law as it relates to this issue, then summarizes the opinions, and finally analyzes the ALJ's findings.

### 1. Law Regarding Handling of Various Medical Opinions

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion.[7] See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v.

---

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-7-

Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Similarly, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 2. Summary of Opinions at Issue

#### a. Treating Physicians

Three treating physicians rendered opinions: Hemant Shah, M.D.[8], Plaintiff's pain management physician; Carolyn Tran, M.D., Plaintiff's primary care physician; and Frank R. Collier, M.D., Plaintiff's spine physician.

Dr. Shah filled out a Residual Functional Capacity Questionnaire on January 22, 2009. Tr. at 512-16. Dr. Shah opined that Plaintiff's prognosis is fair, that she has chronic pain in her neck and right arm, that she has significant limitation of motion, and that she has significant headaches as a result of her cervical spine impairment. Tr. at 512-13. According to Dr. Shah, Plaintiff's pain would frequently interfere with her ability to perform even simple tasks. Tr. at 514. Dr. Shah declined to answer questions about the amount of exertion Plaintiff could handle each day, stating "Need FCE [(functional capacity evaluation).]" Tr. at 514-15, 517.

Dr. Shah filled out another Residual Functional Capacity Form on August 2, 2010. Tr. at 644-48. This time he answered the exertion questions, stating his answers were "Based on an [unspecified] FCE Report." Tr. at 646. Dr. Shah indicated Plaintiff can walk for one hundred minutes per day without rest or severe pain; she can sit thirty-nine minutes at a time; she can stand one to two hours at a time; she can sit for less than two hours each day; she can stand/walk for less than two hours each day; and she must walk at least thirty to forty-five minutes per day for ten minutes each time. Tr. at 646. According to Dr. Shah, Plaintiff needs to be able to shift positions; she will need to take unscheduled breaks every

---

[8] Dr. Shah's last name is spelled "Shaw" throughout the ALJ's Decision.

day for ten to fifteen minutes, during which she will have to lie down and/or rest her head on a high back chair; and she must use a cane or assistive device. Tr. at 647. Dr. Shah opined she can occasionally perform certain activities involving her neck; she can never twist, stoop, or crouch; she can occasionally climb ladders and stairs; and she has significant limitations with reaching, handling, and fingering. Tr. at 647. Finally, Dr. Shah indicated Plaintiff will likely miss more than four days per month as a result of her impairments. Tr. at 648. Dr. Shah filled out a different form on August 2, 2010, in which he indicated on the one hand that Plaintiff is not capable of performing sustained work activities in an ordinary work setting on a regular and continuing basis, but he indicated on the other hand that Plaintiff is capable of performing sedentary work. Tr. at 649.

Dr. Tran wrote a letter on behalf of Plaintiff on December 3, 2007. Tr. at 484. In Dr. Tran's short letter, she stated in relevant part that with regard to Plaintiff's neck problems, she defers to the expertise of Plaintiff's neurosurgeon and pain management physician. Tr. at 484. Dr. Tran indicated that she had previously ordered a functional capacity evaluation, see Tr. at 485-88, and based upon the results of that evaluation, Dr. Tran was "concern[ed] with the findings that [Plaintiff] is unable to sit for more than 39 minutes without pain and the difficulties with dexterity if her job requires her to type or write." Tr. at 484.

Dr. Collier completed an Attending Physician's Assessment of Capacity form in May 2007, Tr. at 537, in which he opined as follows. Plaintiff can frequently (up to five and one-half hours per day) sit; she can occasionally (up to two and one-half hours per day) stand, walk, and drive; she can occasionally engage in light grasping; but she can never climb, squat, bend, kneel, push/pull, or engage in force grasping. Tr. at 537. According to Dr.

Collier, Plaintiff can occasionally finger/type; she can occasionally lift up to ten pounds, but she can never lift more than that; and she can never reach overhead or below her shoulders. Tr. at 537. Dr. Collier opined Plaintiff can function full time at the capacities he indicated. Tr. at 537.

### b. Non-Examining Physicians and Medical Expert

Two non-examining physicians rendered opinions: Eric Puestow, M.D. on March 28, 2007, Tr. at 453-60; and Nicolas Bancks, M.D. on October 6, 2006, Tr. at 428-36. In sum, both non-examining physicians opined Plaintiff is capable of exertion that is tantamount to a wide range of light work as that term is defined in the Regulations. See generally Tr. at 453-60, 428-36; 20 C.F.R. § 404.1567(b).

In addition, medical expert Charles Hancock, M.D. telephonically attended Plaintiff's hearing before the ALJ and rendered an opinion after reviewing the medical evidence. Tr. at 61, 79-103.[9] According to Dr. Hancock, Plaintiff may engage in light work with additional restrictions. Tr. at 82. Those additional restrictions are as follows:

> She would have some restrictions in overhead reaching and lifting because of the shoulder problem on the right. And, as far as postural limitations, she should be limited and not work on ladders, ropes, or scaffolds, but [Dr. Hancock does not] find support to limit climbing ramps or stairs. . . . She should expect to work in a stooped or crouched position only occasionally, but no problems with arthritic changes in the weight bearing joints, such as the ankle, the knees, or the hips. And, she should be able to function frequently in those positions. . . . She should not be exposed to significant concentrated vibrations because of the fusions and the nature of the carpal tunnel disease and she should be restricted from working at unprotected heights.

Tr. at 82.

---

[9] Dr. Hancock acknowledged he had received two exhibits just prior to the hearing, but he testified that he had reviewed them. Tr. at 94-95.

### 3. ALJ's Findings

The ALJ assigned Dr. Hancock's opinion "substantial weight[.]" Tr. at 28.  Although the ALJ did not specifically state the weight given to the other non-examining physicians' opinions, the ALJ did discuss them, Tr. at 28, and it can be inferred that he gave them great weight because the ultimate RFC is generally consistent with their opinions.  The ALJ elected not to give controlling weight to the opinions of Dr. Shah and Dr. Collier.  Tr. at 27, 28.  Specifically, the ALJ indicated he was giving them "lesser weight" than the opinion of Dr. Hancock and some other treatment records.  Tr. at 28.  Regarding Dr. Tran, the ALJ assigned "some weight" to her opinion.  Tr. at 28.  As discussed below, the Court finds that the ALJ articulated numerous reasons, supported by substantial evidence, for discounting the treating physicians' opinions (to the extent they were discounted).  In addition, no error is found in the ALJ's weighing of the rest of the medical opinions.

As to Dr. Shah, the ALJ noted that it appeared his later August 2, 2010 opinion was based on the functional capacity evaluation completed on October 12, 2007.  Tr. at 27; see Tr. at 485-88 (functional capacity evaluation); Tr. at 644-48 (August 2, 2010 form filled out by Dr. Shah).  According to the ALJ, the functional capacity evaluation indicated Plaintiff was "capable of 'sedentary' exertional activity[.]"  Tr. at 27 (referring to Tr. at 485-88).  The ALJ inferred, although did not specifically state, that Dr. Shah's stated limitations are more restrictive than the very evaluation on which he apparently relied in rendering the opinion.  The ALJ specifically stated that Dr. Shah's assigned limitations were based upon the 2007 functional capacity evaluation "and not upon his own treatment of [Plaintiff] which began in 2008."  Tr. at 28.  The ALJ found that because Dr. Shah's opinion "is not supported by the

objective medical and other evidence, and [is] not bolstered by the record, it is not given controlling weight." Tr. at 27.

As to the opinions of both Drs. Shah and Collier, the ALJ pointed to a primary care record from October 2007 that documents Plaintiff reporting exercising by walking and swimming and reporting that it hurt to sit more than thirty minutes to one hour, and the ALJ contrasted that report with a report in October 2010 that Plaintiff exercises by walking three to five times per week for five miles. Tr. at 27 (citing Tr. at 489-92, 658). The ALJ correctly observed that these activities "reveal[] greater functional capability than [Plaintiff] alleges or her doctors have assessed." Tr. at 27. As to Dr. Collier, although the ALJ assigned his opinion lesser weight than that of Dr. Hancock, the ALJ found his "medical source statement that [Plaintiff] could perform full-time at the sedentary exertional level to be credible, particularly given [Plaintiff]'s long walks and swimming that has been reported." Tr. at 28 (emphasis omitted).

As to the opinion of Dr. Tran, the ALJ observed that her opinion was also based on the functional capacity evaluation conducted in 2007, and that the evaluation revealed Plaintiff could perform work at a sedentary level. Tr. at 28 (citing Tr. at 485-88). The ALJ stated, "[T]he limitations in the [functional capacity evaluation] are compatible with a reduced range of light work with a sit/stand option and no overhead work, which have been incorporated into the [RFC]." Tr. at 28.

As for Dr. Hancock's opinion, the ALJ stated the reason for granting it substantial weight over that of Dr. Shah was that Dr. Hancock disagreed with Dr. Shah's findings because they were not supported by his own notes. Tr. at 28; see Tr. at 26-27.

The ALJ's various assignments of weight to the physicians' opinions are supported by substantial evidence, and the ALJ did not err with respect to this issue.

## B. Plaintiff's Credibility

Plaintiff's second issue focuses on the ALJ discrediting her testimony. "[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"[C]redibility determinations are the province of the ALJ." Moore, 405 F.3d at 1212. The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain

-14-

and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).  After considering the claimant's subjective complaints, "the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ summarized Plaintiff's testimony and other evidence of record before finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [according to the ALJ, Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the" ALJ's RFC determination.  Tr. at 25 (emphasis omitted).  The ALJ then detailed his reasons for finding Plaintiff's testimony not entirely credible.  In sum, those reasons are as follows: (1) Plaintiff's report in October 2010 that she was walking five miles a day, three to four times per week (as discussed above), see Tr. at 25; (2) her nineteen pound weight loss from October 2010 to the January 13, 2011 hearing, showing "some consistent exercise" that "is inconsistent with her testimony that she spends most of her day at home, lying around watching TV and not doing too much around the house," Tr. at 25 (referring to Tr. at 64-65); (3) Plaintiff's report in November 2006 of daily activities including "cleaning her house, ironing, vacuuming, cooking, doing laundry, and banking," as well as "watching television, reading, dancing, doing arts and crafts, going shopping at the mall, going to movies and concerts, hanging out with friends, talking on the phone, using the internet, and attending church regularly," Tr. at 25-26 (emphasis omitted)

(citing Tr. at 437-45); (4) Plaintiff's testimony from her 2008 hearing before the ALJ in which she reported significantly greater daily activities than she did during the 2011 hearing before the ALJ, Tr. at 24-25 (referring to Tr. at 45-49, 65-68); and (5) Plaintiff engaging in some work after her alleged onset date, that, although not substantial gainful activity, "indicate[s] that [Plaintiff]'s daily activities have, at least at times, demonstrated a greater capacity than what [Plaintiff] has generally reported," Tr. at 26. The ALJ concluded as follows:

> [Plaintiff's] testimony reveals a wide variety of activities of daily living that are compatible with competitive work activity such as housework, some driving, reading, shopping, and social activities. Multiple evaluators and providers have indicated that [Plaintiff] is capable of performing full-time work activities. Accordingly, . . . the [assigned RFC] is the most that [Plaintiff] can do, despite the existence of her impairments.

Tr. at 28-29.

Upon review of the record and consideration of the ALJ's decision with respect to Plaintiff's credibility, the undersigned finds that the ALJ articulated "explicit and adequate reasons" for discrediting Plaintiff's testimony. Wilson, 284 F.3d at 1225. Those reasons are supported by substantial evidence. As with the first issue, no error is found here.

### C. ALJ's Election Not to Allow Testimony from Plaintiff's Husband and Friend

Plaintiff finally contends that the ALJ erred by refusing to allow testimony from her husband and friend about the effects of her impairments on her life and ability to work. "It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he [or she] is disabled, and, consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

-16-

The Court has reviewed the entire transcript of the hearing before the ALJ and has not found an instance in which Plaintiff's then-attorney requested that the ALJ hear testimony from Plaintiff's husband and friend.  The ALJ did not abrogate his duty to fully and fairly develop the record by not receiving testimony from Plaintiff's husband and friend.

## V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence.  Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 23, 2013.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record
*Pro Se* party

-17-